**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>VICTOR HUGO MALDONADO,<br><br>   Defendant. | No. CR15-4091-LTS<br><br>**ORDER** |

_____

This matter is before me on a Report and Recommendation (R&R) in which the Honorable C.J. Williams, United States Magistrate Judge, recommends that I deny defendant's motion to suppress. *See* Doc. No. 41. The defendant filed a timely objection to the R&R. *See* Doc. No. 45.

## *I.   RELEVANT PROCEDURAL HISTORY*

On December 16, 2015, the grand jury returned an indictment (Doc. No. 2) charging defendant Victor Hugo Maldonado with one count of being a felon and unlawful drug user in possession of a firearm. On March 6, 2016, defendant filed a motion (Doc. No. 18) to suppress evidence. Judge Williams conducted an evidentiary hearing on April 18, 2016. Plaintiff (the Government) called the following witnesses: Sioux City Police Officer Carl Ragar, Tri-State Drug Task Force Officers Cindy Martinez, Michael Koehler and Eric Davis, Drug Enforcement Administration (DEA) Special Agent David Jensen and Woodbury County Sherriff's Deputies Nathan Sands and Tyler Milton. In addition, Government's Exhibits 5, 7 and 8 and Defendant's Exhibits A and C were admitted into evidence.

Judge Williams filed his R&R on April 20, 2016. Defendant then filed his objection (Doc. No. 45) on May 2, 2016. The Government has not filed an objection or a response to defendant's objection.

## II.   APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge

to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. DISCUSSION

Defendant's motion is based on his argument that a traffic stop of his vehicle was unlawful and, therefore, that all evidence gathered as a result of that stop must be suppressed. Defendant's objections to the R&R encompass all aspects of that document. As such, I will review the entire R&R on a *de novo* basis. Because the R&R is based on an evidentiary hearing, I am required (at minimum) to listen to the tape of the hearing or read the hearing transcript. *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995). Here, a transcript is available. *See* Doc. No. 42. I have read the entire transcript, reviewed all of the exhibits submitted by the parties and listened to relevant portions of the tape of the hearing.

#### A. *Applicable Standards*

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "[I]t is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir.2007) (quoting *United States v. Barry*, 98 F.3d 373, 376 (8th Cir. 1996)); *see also United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011). Moreover, "[w]hen multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the

knowledge of the arresting officer as long as there is some degree of communication." *Frasher*, 632 F.3d at 453.

Here, the Government contends that probable cause to stop Maldonado's vehicle existed because law enforcement officers saw Maldonado commit a violation of Iowa Code § 321.314, which states, in relevant part:

> No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

Iowa Code § 321.314. Conducting a turn on a public highway without using a turn signal provides probable cause to initiate a traffic stop. *United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012).

During the hearing, Maldonado's counsel confirmed that the validity of the traffic stop is the only disputed issue raised by his motion to suppress. Doc. No. 42 at 106-07 ("It comes down to the traffic stop."). Thus, if the traffic stop was valid, the motion must be denied.

### B.  *Summary of the Evidence*

On October 6, 2015, law enforcement officers found methamphetamine in a female suspect's car. The suspect agreed to cooperate and stated that she had traded a handgun for the methamphetamine. She identified the location of the transaction as a house located at 1901 West Highland Avenue in Sioux City (the house).

On the morning of October 7, 2015, members of the DEA Task Force, with the assistance of Woodbury County Sheriff's Deputies, set up surveillance on the house while officers applied for a search warrant. Cindy Martinez, Mike Koehler and David Jensen each testified that while awaiting the search warrant, their intention was to stop any

4

vehicle leaving the house if probable cause existed for a stop. Thus, if a vehicle left the house and committed any violations giving rise to probable cause for a stop, it would be stopped. If an officer observed such a violation, he or she would radio deputies to execute a traffic stop on the vehicle.

A black SUV left the house sometime after 8:00 a.m. that morning. Martinez and Koehler followed the vehicle but did not observe any traffic violations before the vehicle stopped at a residence on Blair Street. At that point, the officers returned to the house. Later, however, Martinez saw the same vehicle, or one matching its description, again parked at the house. The vehicle was at the house for over an hour when Martinez and Jensen saw a male and two females leave the house and enter the vehicle.

The vehicle proceeded south, stopped at an intersection, and turned west. No officer was able to observe whether the driver activated the turn signal with regard to that turn. As the vehicle proceeded in a westerly direction, Martinez and Koehler followed in separate, unmarked vehicles. Martinez testified that Koehler's vehicle was one to two car lengths behind the suspect vehicle while Martinez was further back, meaning Koehler's vehicle was between her and the suspect vehicle. Nonetheless, Martinez testified that she was able to see both rear taillights of the suspect vehicle as it approached an intersection with South John Street. She further testified that the vehicle made a complete stop and then turned right onto South John Street without signaling a turn. She testified that she was about to announce the violation over the radio when she heard Koehler or another officer do so.

Koehler similarly testified that he was about 30 to 40 feet behind the suspect vehicle as it approached the intersection with South John Street. He testified that the vehicle came to a stop at South John Street and then turned right without signaling the turn. Koehler testified that he announced the violation over the radio as he turned right to follow the vehicle. He stated that once he became aware that a deputy had visual contact with the vehicle, he turned west onto West First Street so a marked unit could get

5

behind the vehicle. He testified that he gave a direction over the radio to "light him up," meaning to stop the vehicle.

Deputy Tyler Milton testified that he had been parked facing west on West Second Street, near its intersection with South John Street, when he heard radio traffic describing the suspect vehicle. He testified that he heard an officer radio that the vehicle had turned without using a turn signal. Milton saw the suspect vehicle on his left as it approached the intersection of South John Street and West Second Street. He further testified that he radioed to confirm the traffic violation in order to make sure he had probable cause to stop the vehicle.

When this was confirmed, Milton radioed that he would attempt to stop the vehicle. Milton then activated his emergency lights to stop the suspect vehicle. Doing so activated his dashboard camera (dash cam) video recording system, which automatically captured about 30 seconds of video preceding activation of the lights. The recording (Exhibit 5) did not capture the radio traffic announcing the traffic violation or Milton's confirmation of the violation.

The recording does, however, depict the rest of the incident. The suspect vehicle did not come to an immediate stop after Milton activated his emergency lights. Instead, it continued to travel west on West Second Street for about one block, came to a momentary stop at the intersection with Collins Street and, using a turn signal, turned north on Collins Street and traveled for a half block before Deputy Sands, driving south on Collins Street, blocked the vehicle. The deputies arrested Maldonado, the driver, at gun point. Officers searched the vehicle and found a handgun. Maldonado later made incriminating statements.

Sands testified that he had been parked about six blocks from the house when the other officers began following the black SUV. He testified that he heard radio traffic about a vehicle committing a traffic violation, that the vehicle was not stopping and that it was heading north on Collins Street. Sands' location allowed him to turn south onto

6

Collins Street and block the vehicle. He testified that he did not see the vehicle until he drove south on Collins Street to stop it. Sands dictated a report a day or two after the incident in which he stated that the traffic violation forming the basis for the traffic stop was a stop sign violation, not a turn signal violation. Sands testified he was sure he heard on the radio that the vehicle committed a traffic violation, and thought the violation was rolling through a stop sign, but he acknowledged he may have made a mistake.

C.  *Analysis*

Defendant contends that the evidence casts such significant doubt on Martinez's, Koehler's and Milton's testimony about the alleged traffic violation and resulting stop that all such testimony should be rejected. He thus asks me to find that the traffic stop was unlawful and, therefore, that all resulting evidence must be suppressed.

In explaining his credibility determinations, Judge Williams wrote:

> In this case, I found Officers Martinez and Koehler credible when they testified they observed defendant turn north on South John Street without signaling, in violation of Iowa law. In addition to the officers' demeanor and manner of testifying that appeared credible to me, there is other circumstantial evidence supporting the credibility of their testimony. First, Officer Koehler called out on the radio the fact that defendant failed to use a turn signal. Deputy Milton heard the radio call, and confirmed it before he stopped defendant's vehicle. I found Deputy Milton's testimony credible. Second, were officers Martinez and Koehler fabricating a traffic violation, they had other, earlier opportunities to do so. They could have, for example, claimed defendant failed to signal a turn at the very first turn onto West Highland Avenue. The officers' testimony that they could not see whether defendant used a turn signal then lends credibility to their testimony. Indeed, the officers could have claimed defendant's car sped, or swerved in the road, or committed other driving offenses not easily disproven if they were simply fabricating evidence. The fact that they claim only to have seen a single traffic violation enhances their credibility. Third, Officers Koehler and Martinez indicated in their contemporaneous reports that defendant failed to signal a turn, and Deputy Milton's contemporaneous report reflected that radioed message. The officers wrote those reports prior to defendant moving to suppress evidence, and, thus, prior to any

> obvious motive to fabricate a traffic violation. Fourth, none of the officers, agents, or deputies knew who was driving the car. In other words, this is not a case where the officers knew the driver, were specifically targeting the driver, and had a motive to stop the driver at any cost. Rather, the officers here had no idea who the driver was at the time of the stop.

Doc. No. 41 at 8-9. Because my review is de novo, Judge Williams' credibility findings are not entitled to any weight or deference. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). However, based on my review of the entire record, I agree with those findings.

With regard to Martinez, defendant argues that she could not possibly have witnessed a turn signal violation from her position, approximately one block away – especially with Koehler's vehicle in the way. However, Martinez explained that "at the angle that I was at, I had a clear view of both, I guess, rear lights of the vehicle, so I can see as it was going." Doc. No. 42 at 21. Under cross-examination, she continued to maintain that she personally witnessed the turn signal violation. *Id*. at 27. This is consistent with Koehler's testimony, which I will address next. I find Martinez's testimony to be credible.

As for Koehler, there is no doubt that he was in position to observe the alleged traffic violation. However, Maldonado invites me to find that Koehler lied under oath because (a) Sands recalls hearing a radio call about a stop sign violation rather than a turn signal violation, (b) no video or audio evidence exists, (c) it is unlikely that Maldonado would have turned without signaling and (d) officers were looking for an excuse to stop the vehicle. I do not find Sands' testimony to be so inexplicably at odds with Koehler's as to require rejection of Koehler's testimony. Sands did not see the alleged traffic violation but, instead, heard about it over the radio. Doc. No. 42 at 71. When asked if he knew the nature of the violation, he stated: "I believe it was rolling through a stop sign." *Id*. He then acknowledged that he did not "know for sure." *Id*. While he was

8

certain that he heard a radio call about a traffic violation, he was not as certain about the exact nature of the call. *Id.* at 74.

I find that the apparent discrepancy likely results from simple, human error on Sands' part, not dishonest or deceptive conduct by Koehler. Koehler's testimony is consistent with his own contemporaneous report and with Milton's testimony that he heard Koehler announce the turn signal violation over the radio. I further find that the lack of supporting video or audio evidence does not indicate fabrication. The only video evidence of record comes from Milton's dash cam. Milton testified that the dash cam begins to record either (a) automatically when he activates his top lights or (b) manually when he decides to engage it. Doc. No. 42 at 82. Milton also testified that when the dash cam is activated automatically, the video actually begins to record 30 seconds before the top lights are activated, which is how the recording occurred in this case. *Id.* Milton activated his lights to execute the traffic stop, an event that occurred only after the turn signal violation. *Id.* Moreover, defendant's vehicle was not in front of Milton's at the time of the violation. Thus, Milton's dash cam did not capture video of the violation.

This hardly suggests an attempt to fabricate a traffic violation. If anything, it shows that the law enforcement officers involved in the operation did not know if, or when, a traffic violation might occur. While video evidence would be helpful, the lack of such evidence does not establish that any officers testified falsely.

As for an audio recording of Koehler's radio call, that likewise would be helpful.[1] However, the lack of additional corroborating evidence does not mean the radio call did not happen as Koehler described. Four witnesses (Koehler, Martinez, Milton and Sands) testified that Koehler announced over the radio that the suspect vehicle had committed a violation. *Id*. at 21, 42, 79-80. Milton confirmed Koehler's testimony that he described

---

[1] Government's Exhibit 8 includes a recording of subsequent radio communications, but not Koehler's radio call.

the violation as a turn signal violation. *Id.* at 80. While Sands' recollection of the nature of the traffic violation differed, he acknowledged being unsure as to the accuracy of that recollection. *Id.* at 71.

Finally, I agree with Judge Williams that the officers' acknowledged intent to stop the vehicle if a violation occurred is a relevant factor, but not one that renders their testimony incredible. The officers followed the vehicle once but did not stop it. *Id.* at 14-15. Later, when the vehicle was again seen leaving the house, they followed it as it made one turn and traveled two blocks before making the turn at issue. *See* Exhibit 7. Had the officers been intent on fabricating a traffic violation in order to stop the vehicle, they had ample prior opportunities to do so. Indeed, as Judge Williams noted, they "could have claimed defendant's car sped, or swerved in the road, or committed some other driving offenses not easily disproven." Doc. No. 41 at 8.

In short, I find that Koehler's testimony was credible. For the same reasons set forth above, I also find that Milton's testimony was credible. Thus, I find Koehler and Martinez both personally observed Maldonado's vehicle make a right turn without signaling, in violation of Iowa law. I further find that Koehler announced this violation over the police radio and directed that a traffic stop occur. I find that Martinez and Milton heard the radio call, as did Sands. While Sands recalls the nature of the stated traffic violation differently, I find that his recollection is erroneous and that the testimony of Koehler, Martinez and Milton is accurate on that issue.

Because I find that Koehler and Martinez personally witnessed a traffic violation, probable cause existed for the resulting traffic stop. As noted above, Maldonado's motion is premised entirely on his argument that the traffic stop was unlawful. Doc. No. 42 at 106-07. In light of my conclusion that the stop was lawful, the motion must be denied.

## IV. CONCLUSION

Based on my *de novo* review of the issues raised in defendant's motion to suppress (Doc. No. 18) and in his objections (Doc. No. 45) to the R&R (Doc. No. 41), defendant's objections to the R&R are **overruled** and his motion to suppress (Doc. No. 18) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 24th day of May, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE